*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2221**

Donald Bergs,
Relator,

vs.

Department of Employment and
Economic Development,
Respondent.

**Filed September 2, 2014
Affirmed
Johnson, Judge**

Department of Employment and
Economic Development
File Nos. 31327784-3, 31327785-3

Peter B. Knapp, Benjamin Anderson (certified student attorney), St. Paul, Minnesota (for relator)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent)

Considered and decided by Chutich, Presiding Judge; Johnson, Judge; and Rodenberg, Judge.

UNPUBLISHED OPINION

**JOHNSON**, Judge

Donald Bergs sought and received unemployment benefits from the department of employment and economic development after being terminated from his job. After the end of the benefit year applicable to his benefit account, Bergs tried to establish another benefit account. But the department invalidated his attempts to do so because Bergs had not experienced another loss of employment. The department also determined that the unemployment benefits Bergs received on his original benefit account must be reduced by an amount equal to 50 percent of his Social Security old-age benefits. In this petition for certiorari review, Bergs challenges the department's invalidation of his attempts to establish another benefit account and the department's reduction of his benefits. We affirm.

**FACTS**

The procedural history of this case is somewhat complicated, but the parties do not dispute the essential facts.

Bergs was employed by Valor Security Services from June 1, 2009, to August 28, 2011, when he was involuntarily terminated. Bergs applied for unemployment benefits with an effective date of August 28, 2011. Based on the information available at that time, the department made an initial determination that Bergs was ineligible for unemployment benefits because he had been terminated for misconduct.

In May 2012, in a proceeding under the National Labor Relations Act (NLRA), Bergs obtained a ruling that he had been wrongfully terminated for engaging in protected

union activities. The decision awarded Bergs $21,175 in back pay to compensate him for wages he would have earned between August 28, 2011, and April 28, 2012.

For reasons that are not explained by the agency record, Bergs eventually received unemployment benefits on his August 2011 benefit account. The benefit year applicable to his August 2011 account ended in August 2012. Thereafter, on four occasions between August 2012 and June 2013, Bergs was automatically prompted by the department's computer system to file for a new benefit account. Each time, the department's on-line benefit management system allowed Bergs to create another account, but each account promptly was invalidated by department personnel because Bergs had not experienced another loss of employment since his August 2011 termination.

In June 2013, the department issued two determinations of overpayment to Bergs on his August 2011 account. The determinations stated that Bergs's weekly unemployment benefits should have been reduced by 50 percent of the amount of his weekly Social Security old-age benefits. As a result, the department determined that Bergs owed $8,647.

Bergs filed a timely administrative appeal. An unemployment-law judge (ULJ) held a hearing on two days in July and August of 2013 and issued a written decision in August 2013. The ULJ concluded that the department properly determined that Bergs is not entitled to establish another benefit account because he has not experienced another loss of employment. The ULJ also concluded that the determination of overpayment is correct because Bergs's benefits are subject to a reduction equal to 50 percent of his

3

Social Security old-age benefits. Bergs requested reconsideration and, with the assistance of counsel, challenged both conclusions. The ULJ rejected Bergs's arguments and upheld the earlier decision. Bergs appeals to this court by way of a writ of certiorari.

## D E C I S I O N

### I. Invalidation of Benefit Accounts

Bergs first argues that the ULJ erred by concluding that his attempts to establish another benefit account are invalid. Specifically, Bergs argues that the back pay he received in May 2012 is sufficient to establish another account. Bergs's argument presents a question of statutory interpretation, to which this court applies a *de novo* standard of review. *Emerson v. School Bd. of Indep. Sch. Dist. 199*, 809 N.W.2d 679, 682 (Minn. 2012).

Bergs's argument is governed by a statute that provides as follows:

> (a) Unless paragraph (b) applies, to establish a benefit account an applicant must have total wage credits in the applicant's four quarter base period of at least: (1) $2,400; or (2) 5.3 percent of the state's average annual wage rounded down to the next lower $100, whichever is higher.

> (b) *To establish a new benefit account within 52 calendar weeks following the expiration of the benefit year on a prior benefit account*, an applicant must have performed services in covered employment and have been paid wages in one or more completed calendar quarters that started after the effective date of the prior benefit account. The wages paid for those services must be at least enough to meet the requirements of paragraph (a). A benefit account under this paragraph may not be established effective earlier than the Sunday following the end of the most recent completed calendar quarter in which the requirements of paragraph (a) were met. One of the reasons for this paragraph is to

4

prevent an applicant from establishing a second benefit account as a result of one loss of employment.

Minn. Stat. § 268.07, subd. 2 (2012) (emphasis added).

In light of the language in subdivision 2(b) of this statute, an applicant seeking to establish another benefit account must satisfy three conditions. First, the applicant "must have performed services in covered employment . . . after the effective date of the prior benefit account." *Id.*, subd. 2(b). Second, the applicant must "have been paid wages in one or more completed calendar quarters that started after the effective date of the prior benefit account." *Id.* Third, the amount of wages paid must be at least "(1) $2,400; or (2) 5.3 percent of the state's average annual wage rounded down to the next lower $100, whichever is higher." *Id.*, subd. 2(a), (b). These three requirements are intended "to prevent an applicant from establishing a second benefit account as a result of one loss of employment." *Id.*, subd. 2(b).

In this case, Bergs acknowledges that the requirements of subdivision 2(b) apply because each of his attempts to establish another benefit account occurred within 52 weeks of the expiration of the benefit year of his original benefit account. Bergs cannot satisfy the first requirement of subdivision 2(b) because he did not perform services in covered employment between August 2012 and June 2013. For the same reason, Bergs cannot satisfy the second and third requirements of subdivision 2(b). Thus, under a straightforward application of section 268.07, subdivision 2(b), the ULJ properly determined that Bergs was not entitled to establish another benefit account between August 2012 and June 2013. This conclusion fulfills the purpose of subdivision 2(b): "to

5

prevent an applicant from establishing a second benefit account as a result of one loss of employment." *See id.*

Notwithstanding the language of section 268.07, subdivision 2(b), Bergs contends that he is entitled to establish a second benefit account based on his receipt of back pay in May 2012. He contends that his back-pay award meets the requirements of subdivision 2(b) because back pay is considered "wages" and is used to determine "wage credits" in other contexts. Bergs cites two cases in support of his argument.

First, Bergs cites *McClellan v. Northwest Airlines, Inc.*, 304 N.W.2d 35 (Minn. 1981), which addressed the question whether back pay should be considered wages for purposes of calculating wage credits in an applicant's base period. *Id.* at 37. The supreme court held that "when there is an arbitration award of back pay for a period of wrongfully caused involuntary unemployment[,] the award constitutes 'wage credits' and the time it covered constitutes 'week credits' for the purposes of computing unemployment compensation benefits during a subsequent period of another wrongful suspension from work." *Id.* at 38. The supreme court reasoned that back pay received for a period of time within the base period should not be excluded from the calculation of wage credits because "[t]he legislature did not intend to penalize a wrongfully suspended employee and to reward his employer for ill-treating him." *Id.* But the supreme court expressly limited its holding by stating, "We are not holding that every receipt of back pay will count as 'wage credits' and the time covered as 'week credits'; situations may arise in which we might decide to the contrary." *Id.*

6

Second, Bergs cites *Mrkonjich v. Erie Mining Co.*, 334 N.W.2d 378 (Minn. 1983). Under a statute applicable at that time, an applicant seeking to establish an initial benefit account was required to have "earned 15, or more, credit weeks, and $750 or more in wage credits, within the base period of employment in insured work with one or more employers." *Id.* at 381 (quotation omitted). The employees in *Mrkonjich* had worked less than 15 weeks but had earned back pay during their base period for more than 15 weeks. *Id.* at 379-80. The supreme court held that if back pay falls within an applicant's base period, the back pay should be used in computing eligibility for unemployment compensation. *Id.* at 383.

Bergs's argument is somewhat logical but nonetheless fails. Neither *McClellan* nor *Mrkonjich* considered whether a back-pay award may be used to satisfy the statutory requirements of establishing another benefit account. *See Mrkonjich*, 334 N.W.2d at 381-84; *McClellan*, 304 N.W.2d at 37-38. In addition, the statutory requirements to establish another benefit account are different from the statutory requirements to establish an initial benefit account. *Compare* Minn. Stat. § 268.07, subd. 2(a) (initial benefit account), *with id.*, subd. 2(b) (subsequent benefit account).[1] Thus, in light of their limited holdings, *McClellan* and *Mrkonjich* are inapplicable. Furthermore, after *McClellan* and *Mrkonjich*, the legislature added a statement of purpose to the governing statute to indicate that the requirements now contained in section 268.07, subdivision 2(b), are intended "to prevent an applicant from establishing a second benefit account as a result of one loss of

_____

[1]At the time *McClellan* and *Mrkonjich* were decided, the requirements for establishing another benefit account were codified in subdivision 3(1). *See* Minn. Stat. § 268.07, subd. 3(1) (1980 & 1982).

7

employment." *See* 1989 Minn. Laws ch. 65, § 7, at 146 (codified as amended at Minn. Stat. § 268.07, subd. 2(b) (2012)). Thus, even if *McClellan* and *Mrkonjich* might have supported Bergs's position at one time, the legislature has since foreclosed the argument.

Bergs also contends that the ULJ's decision conflicts with an earlier ULJ decision in April 2013 regarding whether Bergs had satisfied the period of ineligibility under section 268.095, subdivision 10. But the April 2013 decision concerns a different issue and a different statutory provision. In the April 2013 decision, the ULJ expressly stated that the determination of ineligibility at issue there "was not based on Minnesota Statutes, section 268.07, subdivision 2," which is the statute at issue in this case. In addition, the April 2013 decision expressly reserved the question whether Bergs could satisfy the requirements of section 268.07, subdivision 2(b). The ULJ noted that "Bergs had satisfied the period of ineligibility under Minnesota Statutes, section 268.095, subdivision 10." The ULJ carefully stated, "*If all other requirements were met*, Bergs is eligible for unemployment benefits." (Emphasis added.) Thus, the April 2013 decision is not inconsistent with the June 2013 decision that the requirements of section 268.07, subdivision 2(b), were not satisfied.

In sum, the ULJ did not err by determining that Bergs was not entitled to establish another benefit account between August 2012 and June 2013.

## II. Social-Security Reduction

Bergs also argues that the ULJ erred by concluding that his unemployment benefits should have been reduced by an amount equal to 50 percent of his Social Security old-age benefits. The applicable statute provides, in relevant part:

(a)    Any applicant aged 62 or over is required to state when filing an application for unemployment benefits and when filing continued requests for unemployment benefits if the applicant is receiving, has filed for, or intends to file for, primary Social Security old age benefits.

Unless paragraph (b) applies, 50 percent of the weekly equivalent of the primary Social Security old age benefit the applicant has received, has filed for, or intends to file for, with respect to that week must be deducted from an applicant's weekly unemployment benefit amount.

(b)    If all of the applicant's wage credits were earned while the applicant was claiming Social Security old age benefits, there is no deduction from the applicant's weekly unemployment benefit amount.

2014 Minn. Laws ch. 251, art. 2, § 9, at 686-87 (to be codified at Minn. Stat. § 268.085, subd. 4 (2014)).[2]

Bergs applied for unemployment benefits on August 28, 2011. Accordingly, the applicable base period was July 1, 2010, to June 30, 2011. *See* Minn. Stat. § 268.035, subd. 4(a) (2012). Bergs began receiving Social Security benefits in September 2011. It appears that Bergs did not inform the department of his receipt of Social Security benefits when he began receiving unemployment benefits. The ULJ reasoned that the 50-percent reduction applies to the unemployment benefits Bergs received on his August 2011 benefit account because none of his wage credits were earned while he was receiving Social Security benefits. Given the plain language of the statute, the ULJ was correct. The exception in paragraph (b) does not apply to Bergs because he did not earn all of his

---

[2]The legislature recently amended Minn. Stat. § 268.085. *See* 2014 Minn. Laws ch. 251, art. 2, § 9 at 686-87. Because the amendments merely clarify the preexisting law, we apply the amended version to this case. *See Braylock v. Jesson*, 819 N.W.2d 585, 588 (Minn. 2012).

wage credits while he was receiving Social Security old-age benefits. In fact, he did not earn *any* of his wage credits while he was receiving Social Security old-age benefits. Accordingly, the ULJ did not err by upholding the department's determination of overpayment.

Bergs contends that the ULJ erred because his base period should be based on his attempted (but invalidated) January 2013 benefit account, not his August 2011 account. As explained above in part I, Bergs was not entitled to establish another benefit account in January 2013. In addition, the overpayment at issue was paid on his original August 2011 account or a federal extension of the August 2011 account, and all benefits were paid before January 2013. Furthermore, Bergs's argument contradicts the purpose of the exception in section 268.085, subdivision 4(b), which is to ensure that an applicant who is receiving Social Security old-age benefits has demonstrated a desire and ability to work. *See Hasledalen v. Department of Emp't & Econ. Dev.*, 811 N.W.2d 133, 136 (Minn. App. 2012). As far as the agency record reveals, Bergs has not worked since he started receiving Social Security old-age benefits.

In sum, the ULJ did not err by determining that Bergs's unemployment benefits are subject to a reduction equal to 50 percent of the Social Security old-age benefits he earned while collecting unemployment benefits.

**Affirmed.**

10